**Stephen R. YANKUN, Plaintiff,**

v.

**Jo Anne BARNHART, Defendant.**

**Civil Action No. 05–cv–10006–NMG.**

United States District Court,
D. Massachusetts.

Nov. 29, 2006.

Lindsay P. Rand, Nashawaty & Rand, Braintree, MA, for Plaintiff.

Anita Johnson, United States Attorney's Office, Boston, MA, for Defendant.

### MEMORANDUM & ORDER

GORTON, District Judge.

The Social Security Administration ("SSA") contends that as of August, 1995, Stephen R. Yankun ("Yankun") no longer qualified for disability insurance yet continued to receive benefits until May, 2000. The SSA is seeking repayment of those insurance benefits but Yankun responds that he is without fault in accepting the overpayment and requests that the Court review the SSA's denial of a waiver of repayment. For the reasons set forth below, the Court will deny Yankun's motion and grant the government's motion to affirm the decision of the Commissioner.

### I. *Background*

Plaintiff Yankun suffered a stroke in February, 1991 and was approved for disability insurance benefits. In August, 1993, Yankun began working again and the record reveals that from the years 1995 through 2000, he earned, approximately, $8,400, $12,000, $12,700, $11,200, $12,900 and $17,300, respectively. In May, 2000, the SSA notified Yankun that, based on his employment, his right to disability payments had ended in August, 1995 and that he had, in fact, received an overpayment of $68,750.70 in benefits in the interim.

In response to the SSA's demand that he repay the excess benefits, Yankun applied for a waiver of repayment. The SSA denied Yankun's application and in 2002, Yankun requested a hearing before an administrative law judge ("ALJ"). The hearing was held on September 3, 2003 and Yankun was represented by his daughter, Lindsey Yankun. On January 30, 2004, the ALJ found that Yankun had been overpaid by $68,750.70, and was not without

fault in causing the overpayment to be made and thus was not permitted to waive repayment. Following the ALJ's adverse opinion, Yankun requested review by the Appeals Council which declined to review the decision on November 2, 2004. *See* 20 C.F.R. § 404.506(a).

Yankun now seeks review of the Social Security Commissioner's denial of his request for a waiver of overpayment of disability benefits. According to Social Security Act, § 405(g), this Court has jurisdiction to review a "final decision" of the Commissioner denying a request. Where the Appeals Council has denied a request for review, the "final decision" for review is the ALJ's decision.

### II. *Discussion*

#### A. Standard of Review

The Court reviews the decision of the ALJ to determine whether it was decided based on the proper legal standards and supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The Court may affirm, modify or reverse a final determination by the SSA based on the pleadings and the transcript of the record. 42 U.S.C. § 405(b). The factual findings of the ALJ must be affirmed if they are supported by substantial evidence in the record, and this substantial evidence standard is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also* 42 U.S.C. § 405(b),(g); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991). If there exists substantial evidence to support the decision of the ALJ, this Court cannot substitute its own interpretation for that decision "even if the record arguably could justify a different conclusion." *Pagan v.*

*Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987).

A denial of benefits will not be upheld, however, where there has been an error of law. *See Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). Questions of law are reviewed *de novo* by the district court. *Seavey*, 276 F.3d at 9. While a failure to apply the correct legal principles is grounds for reversal, this Court does not have to order a remand "if it will amount to no more than an empty exercise". *Ward v. Comm'r of Social Security*, 211 F.3d 652, 656 (1st Cir.2000).

## B. Analysis

### 1. Overpayment of Benefits

Pursuant to the Social Security Act, disabled individuals are entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1)(D). A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). To qualify as substantial gainful activity, the work activity must be both substantial and gainful. 20 C.F.R. § 416.972.

Under the regulations, substantial gainful activity is presumed if the claimant's average earnings are greater than $500 per month.[1] 20 C.F.R. § 404.1574(b). No payments are to be made to any claimants who engage in substantial gainful activity and thus no longer meet the definition of disability. 42 U.S.C. § 423(a)(1).

The Social Security Act also provides that upon a finding that an incorrect amount of disability benefits has been paid, any overpayment shall be recouped either by reduction of the amount of current benefits or through refund from the

recipient. 42 U.S.C. § 404(a)(1)(A), (B). Recovery of an overpayment shall be waived if 1) the recipient is found to be without fault in causing the overpayment and 2) the adjustment or recovery would defeat the purpose of the Act or be against equity and good conscience. 42 U.S.C. § 404(b). If a claimant fails to establish that he was without fault, analysis of the second prong is unnecessary.

### 2. Determining Fault

In this case, neither party contests the accuracy of the evidence indicating that during the subject time period Yankun received income from substantial gainful activity. Rather, the central issue in dispute is whether the ALJ applied the correct legal standard in determining that Yankun was not without fault in his acceptance of disability overpayments. Social Security regulations state:

> In determining whether an individual is at fault, the Social Security Administration will *consider all pertinent circumstances,* including the individual's age and intelligence, and any physical, mental, educational, or linguistical limitations ... the individual has. What constitutes fault ... depends upon whether the facts show that the incorrect payment to the individual ... resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of payment which he either knew or could have been expected to know was incorrect.

---

1. This amount applies to monthly earnings between January, 1990 and June, 1999. If average earnings between July, 1999 and December, 2000 are greater than $700 per month, substantial gainful activity is presumed.

20 C.F.R. § 404.507 (emphasis added). Specifically, the parties disagree as to what it means to "consider all pertinent circumstances".

Yankun contends that the ALJ failed to consider adequately mental limitations resulting from his original injury in determining his ability to comply with or comprehend the Social Security regulatory requirements. He argues that the ALJ failed to investigate his mental capacity during the overpayment time period between 1995 and 2000.

The government, while admitting that the ALJ made no specific findings regarding Yankun's mental limitations, contends that the ALJ made statements that are sufficient to meet the statutory requirement to "consider" such pertinent circumstances. In its memorandum, the government points specifically to the ALJ's statements that:

> [Plaintiff] is currently working and does not appear to be disabled ... [and] cannot be found to be without fault in causing the overpayment due to substantial gainful activity.

These statements cited by the government refer to two distinct pertinent time periods: the date of the administrative hearings (2003) and the period of overpayment (1995–2000). Evidence of Yankun's mental or physical ability after the payments (i.e. during the hearing) has no bearing on a determination of fault. Thus, the ALJ's statements regarding Yankun's current employment and current appearance are inapplicable. The ALJ's comments, however, regarding Yankun's ability to engage in substantial gainful employment and incur earnings from 1995 are on point and are the focus of this Court's review.

At issue is whether the ALJ's statements are sufficient to meet the requirement that the he "consider" Yankun's cir-

cumstances. The First Circuit Court of Appeals has not interpreted the pertinent regulatory language, but in support of his position that the ALJ was required to discuss his mental disability explicitly, Yankun leans heavily on a Second Circuit case, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037 (2d Cir.1984). In *Valente*, the Second Circuit held that the ALJ had not complied with the regulatory requirements because he failed to "indicate how, or whether he applied [the § 404.506 criteria]". *Id.* at 1043.

The government contends that the ALJ's decision in this case differs from the one in *Valente* because the ALJ here made specific statements regarding Yankun's ability to find work. The government urges the Court to rely, on the other hand, upon a Ninth Circuit case, *Anderson v. Sullivan*, 914 F.2d 1121 (9th Cir.1990). The *Anderson* Court rejected the argument that the ALJ must make explicit findings on those factors and read the regulatory provision to allow more general consideration of the circumstances. In *Anderson*, the Ninth Circuit Court of Appeals concluded that the requirement to consider pertinent circumstances was fulfilled "by asking questions ... directed at gleaning the extent to which appellant's [disability] may have contributed to overpayment". *Id.* at 1123 n. 1. While the ALJ in this matter did not ask about Yankun's mental limitations, he did ask several questions about Yankun's employment during the time period in question.

While the ALJ could have done more to probe Yankun's mental capacity, he indicates clearly in his decision that Yankun is not without fault "due to [his] substantial gainful activity". Moreover, the administrative record confirms Yankun's employment earnings between 1995 and 2000. The ALJ's decision thus implies that Yankun's ability to find gainful employment

was sufficient evidence of a mental capacity to understand his responsibilities to report to the SSA.

■ The SSA must make specific findings regarding these pertinent circumstances when resolving the fault question. *See Califano v. Yamasaki,* 442 U.S. 682, 696–97, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). The First Circuit has not, however, adopted the Second Circuit's more rigorous requirement that the ALJ explicitly discuss each applicable pertinent characteristic. Moreover, the plain language of the regulation requires only that the ALJ "consider" these factors and thus appears to give the ALJ discretion as to whether he must make explicit findings. Although the ALJ in this case did not make such findings, he made specific findings regarding Yankun's employment between 1995 and 2000 and noted in his decision that Yankun was "medically improved and was able to find work he could do". Consequently, the ALJ considered the pertinent characteristics within the context of Yankun's employment status between 1995 and 2000.

### 3. Credibility

■ In most cases, the issue of credibility is best left to the ALJ and not the reviewing court. *See Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir.1987). Where "credibility is a critical factor in determining whether the claimant was without fault, the ALJ must have stated explicitly whether he believed the witness's testimony." *Setian v. Callahan,* 973 F.Supp. 46, 50 (D.Mass.1997)(quoting *Valente,* 733 F.2d at 1045).

Yankun contends that the ALJ failed to make an adequate assessment of his credibility with respect to his claim that he and his wife had attempted to notify the SSA of his return to work. At the hearing,

Yankun stated that he had notified the SSA in writing that he had returned to work. Moreover, his daughter, as his representative, stated that Yankun's wife also called the SSA to notify them. Yet, when pressed by the ALJ to be more specific, Yankun testified that he "called J. Lowe and left a message a 12/13/98 at 10:50 a.m." In addition to finding no evidence to corroborate his claim, the ALJ noted that 1998 was several years after Yankun had returned to work in 1993 and finished his trial work period in 1995.

In his decision, the ALJ made no explicit finding of credibility nor did he conduct any analysis of the testimony of either Yankun or his representative. He simply reiterated Yankun's claim that he had reported work activity and stated that there was no corroborating evidence on the record. The ALJ's reference to the lack of evidence on the record without providing any assessment of the witness' credibility clearly falls short of an explicit finding.

In this case, however, the ALJ found that the employment evidence, together with the lack of any evidence indicating an attempt to notify SSA of the changed work status, was conclusive and that witness credibility was not a critical factor. In contrast with the facts in the Second Circuit's decision in *Valente,* there is no credible evidence indicating that Yankun had reported his earnings to SSA or had received confusing or incorrect information from SSA. 733 F.2d at 1045. Thus, unlike that case, the credibility of Yankun and his representative is not a critical factor here and the ALJ is not required to make explicit findings.

■ The evidence of Yankun's significant gainful employment is undisputed and the ALJ stated that "[i]n any event, there is no proof in the record that [Yankun] reported work activity to the Social Securi-

ty Office". There is substantial evidence on the record to support his finding that Yankun was gainfully employed during the time period in question and is not without fault in accepting the overpayments.

### ORDER

For the foregoing reasons, the government's motion to affirm the decision of the Commissioner (Docket No. 9) is **ALLOWED** and, accordingly, the plaintiffs's motion for summary judgment (Docket No. 6) is **DENIED**.

So ordered.